# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

_____
STATE OF OKLAHOMA ex rel.    )
SCOTT PRUITT, in his official   )
Capacity as Attorney General of )
Oklahoma,                     )
                            )    Civ. Action No. 5:11-cv-00605-F
         Plaintiff,    )
                            )
     v.                   )
                            )
                            )
LISA P. JACKSON,        )
ADMINISTRATOR, in her official )
Capacity as Administrator of the )
United States Environmental   )
Protection Agency,       )
                            )
         Defendant.   )
_____)

**DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b), OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………….. ii

BACKGROUND………………………………………………………………… 2

    I.    STATUTORY BACKGROUND…………………………………….. 2

    II.    FACTUAL BACKGROUND………………………………………... 4

STANDARD OF REVIEW……………………………………………………… 6

ARGUMENT…………………………………………………………………… 7

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
        THIS CASE..……………………………………………………… 7

        A.    IF REVIEWABLE AT ALL, JUDICIAL REVIEW OF
            PLAINTIFF'S CLAIMS IS LIMITED TO THE UNITED STATES
            COURT OF APPEALS FOR THE TENTH CIRCUIT…………... 7

        B.    THE CASE IS NOT RIPE FOR REVIEW………………………. 11

    II.    THE COMPLAINT FAILS TO STATE A CLAIM…………………….. 14

        A.    THE CAA DOES NOT IMPOSE A NONDISCRETIONARY
            DUTY ON EPA TO PARTIALLY DISAPPROVE OKLAHOMA'S
            SIP BEFORE AND SEPARATE FROM PROMULGATING A
            PARTIAL FIP………………………………………………….. 14

        B.    EPA'S DUTY TO PROMULGATE A FIP DOES NOT CEASE
            ONCE IT HAS MISSED THE STATUTORY DEADLINE…….. 16

    III.    IN THE ALTERNATIVE, DEFENDANT MOVES TO TRANSFER
         VENUE PURSUANT TO 28 U.S.C. § 1404(a)………………………… 20

CONCLUSION………………………………………………………………… 22

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner,*
  387 U.S. 136 (1967) ............................................................................. 11, 13

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
  988 F.2d 1157 (Fed. Cir. 1993) ...................................................................... 7

*Anaconda Co. v. Ruckelshaus,*
  482 F.2d 1301 (10th Cir. 1973) ......................................................... 10, 11, 12

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................ 6

*Bethlehem Steel Corp. v. Gorsuch,*
  742 F.2d 1028 (7th Cir. 1984) ...................................................................... 13

*Brock v. Pierce County*,
  476 U.S. 253 (1986) ................................................................................ 16, 17

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  710 F.2d 842 (D.C. Cir. 1983) ...................................................................... 12

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ...................................................................................... 16

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) .................................................................... 20

*Coal. for Clean Air v. S. Cal. Edison Co.*,
  971 F.2d 219 (9th Cir. 1992) .................................................................. 14, 15

*FTC v. Standard Oil Co.*,
   449 U.S. 232 (1980) ................................................................................. 12

*General Motors Corp. v. United States*,
   496 U.S. 530 (1990) ................................................................................. 17

*Holt v. United States*,
   46 F.3d 1000 (10th Cir. 1995) .................................................................. 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................. 6

*Mountain States Legal Found. v. Costle*,
   630 F.2d 754 (10th Cir. 1980) ....................................................... 2, 8, 9, 18

*Natural Res. Def. Council, Inc. v. Thomas*,
   885 F.2d 1067 (2d Cir. 1989) ................................................................... 8

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) ................................................................................. 12

*Ridge at Red Hawk, L.L.C. v. Schneider*,
   493 F.3d 1174 (10th Cir. 2007) ............................................................ 6, 7

*Ruckelshaus v. Sierra Clu*b,
   463 U.S. 680 (1983) ................................................................................. 7

*Sierra Club v. Browner*,
   130 F. Supp. 2d 78 (D.D.C. 2001)............................................................ 8

*Sierra Club v. Thomas,*
   828 F.2d 783 (D.C. Cir. 1987)................................................................. 2

*Sw. Pa. Growth Alliance v. Browner*,
   121 F.3d 106 (3d Cir. 1997) ..................................................................... 17

*United States v. Dolan*,
    571 F.3d 1022 (10th Cir. 2009) ...........................................................................17, 18

*United States v. Sherwood*,
    312 U.S. 584 (1941) .............................................................................................6, 7

*United Steel Workers of Am. v. Or. Steel Mills, Inc.*,
    322 F.3d 1222 (10th Cir. 2003) .................................................................................10

*Utah Int'l, Inc. v. EPA*,
    478 F.2d 126 (10th Cir. 1973) ..................................................................................12

## RULES

Fed. R. Civ. P. 12(b)(1) ..................................................................................11, 13, 20

Fed. R. Civ. P. 12(b)(6) ......................................................................................16, 20

## STATUTES

28 U.S.C. § 1404(a) .......................................................................................20, 21, 22

42 U.S.C. § 7407(d)(7) ...............................................................................................4

42 U.S.C. §§ 7408-7409 ..............................................................................................2

42 U.S.C. § 7410(a) ....................................................................................................3

42 U.S.C. § 7410(a)(2)(D) ...........................................................................................3

42 U.S.C. § 7410(c) .........................................................................................4, 14, 15

42 U.S.C. § 7491(b) ....................................................................................................3

42 U.S.C. § 7492(e) ....................................................................................................3

42 U.S.C. § 7492(e)(2) ................................................................................................3

42 U.S.C. § 7604 .................................................................................................7, 21

42 U.S.C. § 7604(a) ............................................................................. 2, 8

42 U.S.C. § 7604(a)(2) ....................................................................... 8, 19

42 U.S.C. § 7607(b), (e) ......................................................................... 8

42 U.S.C. § 7607(b)(1) ........................................................................... 9

42 U.S.C. § 7607(d)(5) ......................................................................... 13

42 U.S.C. § 7607(d)(9)(A) ...................................................................... 9

42 U.S.C. § 7607(d)(9)(D) ...................................................................... 9

## **FEDERAL REGISTERS**

64 Fed. Reg. 35,714 (July 1, 1999) ........................................................ 4

74 Fed. Reg. 2392 (Jan. 15, 2009) .................................................... 4, 5, 14

76 Fed. Reg. 16,168 (Mar. 22, 2011) .......................... 3, 4, 5, 6, 12. 13, 15, 21

In the guise of an action to enforce a statutory deadline, Oklahoma challenges EPA's statutory authority to propose to partially disapprove Oklahoma's Clean Air Act ("CAA") state implementation plan ("SIP") submission and promulgate a partial federal implementation plan ("FIP") and EPA's authority to do so after EPA's statutory deadline to promulgate a FIP for Oklahoma has passed. *See* Complaint ¶¶ 16-23. The Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because this Court has no jurisdiction to review such claims, or under 12(b)(6) because the CAA mandates that EPA take the actions at issue in this matter and therefore the Complaint fails to state a claim for which relief can be granted.

Plaintiff brought this action because it is dissatisfied with the substance of the action EPA has proposed to take, not because it wants EPA to take action. Jurisdiction to review any challenge to the substance of EPA action under the Act lies in the exclusive jurisdiction of the courts of appeals. And, of course, it is a basic principle of administrative law that such review must await final agency action. Thus, this court lacks jurisdiction over Plaintiff's claims.

Moreover, while the district courts have jurisdiction under section 304(a)(2) of the Act over actions to compel EPA to take nondiscretionary action, Plaintiff does not seek to compel EPA to take a nondiscretionary action. Instead, Plaintiff asks this court to restrict the substance of EPA's action, and seeks not to compel EPA to act, but to prevent it from acting. Thus, Plaintiff has failed to state a claim as to which relief can be granted, and its Complaint should be dismissed. Alternatively, the Court should transfer the case to the

Northern District of California because the remedy Plaintiff requests—an order enjoining EPA from taking final agency action on the proposed partial disapproval of Oklahoma's Regional Haze SIP and partial FIP—would prevent EPA from taking action required under a Consent Decree entered in that district.

## BACKGROUND

## I.    STATUTORY BACKGROUND.

The Clean Air Act controls air pollution through a system of shared federal and state responsibility.  *See Mountain States Legal Found. v. Costle*, 630 F.2d 754, 757 (10th Cir. 1980).  It is a prescriptive statute, establishing numerous deadlines for action by EPA and the States, and providing any interested person with a mechanism to force EPA to take nondiscretionary action when it misses those deadlines.  Section 304 of the Act, the section under which Oklahoma brings this suit, provides a cause of action against the EPA Administrator "where there is alleged a failure of the Administrator to perform an act or duty under [the Act] which is not discretionary."  42 U.S.C. § 7604(a)(2).  It further provides that in such a suit, the district court "shall have jurisdiction . . . to order the Administrator to perform such act or duty."  *Id.*  A nondiscretionary duty enforceable under section 304(a)(2) arises under a statutory provision that "categorically mandates" that specified action be taken by a "date-certain deadline."  *Sierra Club v. Thomas*, 828 F. 2d 783, 791 (D.C. Cir. 1987).

Among its substantive provisions, the Act requires EPA to establish, review, and revise national ambient air quality standards ("standards") for certain common air pollutants.  42 U.S.C. §§ 7408-7409.  The Act also requires EPA to promulgate

regulations to prevent the impairment of visibility, or regional haze, in national parks and wilderness areas. *Id.* §§ 7491(b); 7492(e). Regional haze is produced by a number of sources and activities in a broad geographic area through emissions of fine particles (e.g., sulfates, nitrates, organic carbon, elemental carbon, and soil dust) and their precursors (e.g., SO2, nitrogen oxides, and in some cases ammonia and volatile organic compounds). *See* 76 Fed. Reg. 16,168, 16,170 (Mar. 22, 2011). These substances react in the atmosphere to form what is called PM2.5. *See id.* The presence of PM2.5 in the air reduces visibility by reducing the clarity, color, and distance one can see. *See id.* at 16,171. PM2.5 can also cause serious health effects and mortality in humans and contributes to environmental problems like acid deposition and eutrophication. *See id.*

Under CAA Section 110(a), each State is required to develop a plan, called a state implementation plan ("SIP"), for EPA's review and approval, to implement, maintain, and enforce the standards and prevent impairment of visibility in national parks and wilderness areas. *See* 42 U.S.C. §§ 7410(a), 7492(e)(2). The primary goal of a SIP is to explain what regulations, control measures, and programs the State will use to ensure that air quality within the State meets the standards, *see generally id.* § 7410(a), but a SIP must also explain how the State will ensure that emissions from within the State will meet the regional haze regulations and not have certain prohibited impacts on air quality in other States. *See id.* § 7410(a)(2)(D) (the "interstate transport requirements").

States are required to update and revise the SIPs whenever EPA promulgates new or revised standards and regional haze regulations, and must submit the revised SIP to EPA for approval. *See id.* §§ 7410(a); 7407(d)(7). If EPA finds that a State has failed to

submit the required revised SIP, if EPA finds that a State's revised SIP is incomplete, or

if EPA disapproves the revised SIP in whole or in part, the CAA requires that EPA

promulgate its own plan, called a federal implementation plan ("FIP"), to implement,

maintain, and enforce the standards and regional haze regulations in the State. The Act

requires that EPA do so within two years of such a finding or disapproval unless the State

corrects the deficiency and EPA approves the revised SIP before EPA promulgates a FIP.

*Id.* § 7410(c).

## II.    FACTUAL BACKGROUND.

In 1999, EPA revised its existing visibility regulations to include regulations

aimed at reducing regional haze ("regional haze regulations") pursuant to CAA Section

169B. *See* 64 Fed. Reg. 35,714 (July 1, 1999). EPA subsequently revised the regional

haze regulations in 2005 and required States to submit the relevant SIP revisions by

December 17, 2007. *See* 76 Fed. Reg. at 16,171. At that time, States were also under an

obligation to submit SIP revisions demonstrating compliance with the interstate transport

requirements of Section 110(a)(2)(D)(i) for the 1997 ozone and PM2.5 standards. In a

guidance document published in 2006, EPA recommended that States could meet one

element of the interstate transport requirements—the visibility element—by submitting a

regional haze SIP. *See* 76 Fed. Reg. 16,193.

On January 15, 2009, EPA published a finding that Oklahoma and several other

States, the District of Columbia, and the U.S. Virgin Islands had failed to meet the

December 17, 2007 deadline for regional haze SIP submissions. *See* 74 Fed. Reg. 2392

(Jan. 15, 2009). Accordingly, EPA acknowledged that it had an obligation under the

CAA to promulgate a FIP for each of the listed States or territories within two years unless EPA subsequently received and approved a regional haze SIP for each of the named States and territories. *See id.*

On June 3, 2009, WildEarth Guardians brought suit against EPA alleging that EPA failed to perform its nondiscretionary duty to approve a SIP or promulgate a FIP to satisfy the interstate transport requirements of CAA Section 110(a)(2)(D)(i) with regard to EPA's 1997 ozone and PM2.5 standards for several States, including Oklahoma, within the two-year time period. *See WildEarth Guardians v. Jackson*, 4:09-cv-02453-CW (N.D. Cal.), Complaint ¶¶ 1, 19, 23-25. EPA subsequently entered into a Consent Decree with WildEarth Guardians committing to, *inter alia*, approve a SIP or promulgate a FIP for Oklahoma to satisfy some of the interstate transport requirements of CAA Section 110(a)(2)(D)(i) with regard to EPA's 1997 ozone and PM2.5 standards by November 10, 2010, and some by May 10, 2011. *See id.*, Consent Decree, Docket Entry 26, ¶¶ 5(c), 6(a)-(b), 7(a)-(b). The court entered the WildEarth Consent Decree on February 23, 2010, and subsequently, on May 2, 2011, approved an extension of such deadlines to October 14, 2011. *See id.* Order, Docket Entry 35. Accordingly, EPA's current deadline for action under the Consent Decree is October 14, 2011.

Meanwhile, on February 19, 2010, Oklahoma submitted a Regional Haze SIP to EPA. 76 Fed. Reg. at 16,169. On March 22, 2011, EPA published a proposed rule proposing to approve in part and disapprove in part Oklahoma's Regional Haze SIP submission. *Id.* at 16,168. For the portions of the SIP submission that EPA proposed to disapprove, EPA also proposed to promulgate a partial Regional Haze FIP for Oklahoma.

*Id.*  In the proposed rule, EPA stated that the Agency intended to satisfy its obligation under the WildEarth Consent Decree to approve a SIP or promulgate a FIP for Oklahoma to satisfy the interstate transport requirements of CAA Section 110(a)(2)(D)(i) with regard to EPA's 1997 ozone and PM2.5 standards by approving Oklahoma's Regional Haze SIP in part and promulgating a partial Regional Haze FIP for Oklahoma.  *Id.* at 16,193.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction that may exercise only those powers authorized by the Constitution and by statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Therefore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (citations omitted).  Unless Congress has consented to a cause of action against the United States, there is no jurisdiction in any court to entertain such suit.  *United States v. Sherwood*, 312 U.S. 584, 586-88 (1941).  Therefore, a court may dismiss a case under Fed. R. Civ. P. 12(b)(1) if it does not have jurisdiction.  In reviewing a facial attack on the complaint's allegations of subject matter jurisdiction, the court must accept the allegations in the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Additionally, a court must dismiss a case under Fed. R. Civ. P. 12(b)(6) if the complaint fails to state a claim that is plausible on its face.  *See Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  Rule 12(b)(6) motions serve the purpose of allowing the

court "to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc*., 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citations omitted).  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true and views them in the light most favorable to the plaintiff.  *Ridge at Red Hawk*, 493 F.3d at 1177.

## ARGUMENT

I.  **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE.**

    A.  **IF REVIEWABLE AT ALL, JUDICIAL REVIEW OF PLAINTIFF'S CLAIMS IS LIMITED TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT.**

Because this is a suit against the United States, this Court has jurisdiction only to the extent that the United States has waived its sovereign immunity.  The Supreme Court has repeatedly held that "[w]aivers of immunity must be construed strictly in favor of the sovereign . . . and not enlarge[d] . . . beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983) (quotations and citations omitted).  Where the United States has consented to be sued, the terms of that waiver of sovereign immunity define the extent of the court's jurisdiction.  *United States v. Sherwood*, 312 U.S. at 586.

CAA Sections 304 and 307 provide the CAA's judicial review framework, providing waivers of sovereign immunity in certain limited circumstances.  Specifically, Section 304, the CAA's citizen suit provision, provides the exclusive means of obtaining judicial review in the district court under the CAA.  *See* 42 U.S.C. § 7604.  Under Section

304, any person may bring a civil action to enforce the CAA against persons who have violated its provisions, including against the Administrator of the EPA "where there is alleged a failure of the Administrator to perform any act or duty . . . which is not discretionary with the Administrator . . . ." *Id.* § 304(a)(2). "Congress thus restricted citizens' suits to actions seeking to enforce specific non-discretionary clear-cut requirements of the [CAA.]" *Mountain States*, 630 F.2d at 766. The district court's inquiry under Section 304(a)(2) is confined to a "factual determination of whether [performance of a nondiscretionary duty] did or did not occur." *Natural Res. Def. Council, Inc. v. Thomas*, 885 F.2d 1067, 1073 (2d Cir. 1989). In fashioning a remedy to address such a failure, "the CAA does not allow district courts to address the content of EPA's conduct, issue substantive determinations on its own, or grant other forms of declaratory relief." *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 90 (D.D.C. 2001). Rather, the CAA specifically limits district courts' jurisdiction to "order[ing] the Administrator to perform such act or duty." 42 U.S.C. § 7604(a).

Once the Administrator has taken final agency action, CAA Section 307(b) provides exclusive jurisdiction to the courts of appeals to review the substance and procedure of such final action. *See id.* § 7607(b), (e) ("Nothing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in this section."); *see also Mountain States*, 630 F.2d at 757 ("Decisions handed down prior and subsequent to the 1977 amendments to the [CAA] make it clear that exclusive jurisdiction for review of regulations or actions of the

Administrator of EPA vests in the courts of appeals.").  Most relevant here, CAA Section 307(b)(1) provides,

> A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 . . . or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.

42 U.S.C. § 7607(b)(1).  Section 307 review extends to whether the final actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 7607(d)(9)(A), and whether there were procedural deficiencies in the rulemaking process.  *Id.* § 7607(d)(9)(D).  Thus, under CAA Section 304(a)(2), a plaintiff may obtain an order from a district court setting a deadline by which EPA must take action, but under CAA Section 307(b)(1), a petitioner may obtain review by a court of appeals of the substance of the final action and the procedure under which it was taken.

Here, although Plaintiff uses the words "failure to take final action" and cites CAA Section 304(a)(2), the gravamen of Plaintiff's Complaint has to do with the substance and procedure of what EPA has proposed to do with regard to Oklahoma's Regional Haze SIP.  *See* Complaint ¶¶ 18, 23.  Plaintiff takes issue with the procedure by which EPA performed its duty and its statutory authority to do so, rather than the Agency's failure to perform a duty, by alleging that EPA "failed to take final action on Oklahoma's Regional Haze SIP *prior to* promulgating a proposed Regional Haze FIP," *id.* ¶ 18, and "promulgated the proposed Regional Haze FIP for Oklahoma after the two-year deadline for it to do so under the CAA."  *Id.* ¶ 23.  Moreover, Plaintiff does not ask merely for an

order compelling EPA to take action; Plaintiff seeks injunctive relief prohibiting EPA from taking action unless it acts in a certain way. *See id.*, Prayer for Relief. Thus, Plaintiff's claims are plainly challenges to the substantive and procedural validity of EPA's proposed action packaged as CAA Section 304(a)(2) claims. As such, this Court lacks jurisdiction to review them and entertain Plaintiff's request for injunctive relief. *See United Steel Workers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1225 (10th Cir. 2003) (noting that district courts lack jurisdiction where plaintiffs file "cleverly packaged citizen suit claim[s]" but seek to challenge the substance of a rulemaking).

For controlling precedent, this Court need look no further than *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301 (10th Cir. 1973). In that case, as in this case, the plaintiff sought injunctive relief from a district court against EPA's promulgation of a proposed FIP, arguing that for various reasons, EPA lacked authority to promulgate the proposed FIP. *Id.* at 1303. On appeal of the district court's grant of injunctive relief, the Tenth Circuit held that under the CAA's judicial review framework, the district court lacked jurisdiction to entertain the injunction suit. *Id.* at 1304. The Tenth Circuit explained that "[t]he presence of a statutory review remedy will ordinarily render the injunctive interruption of the administrative process improper." *Id.* The court stated that then-Section 1857h-5(b)(1) (now CAA Section 307) provided such a remedy by specifically providing the courts of appeals exclusive review of approval or promulgation of implementation plans. *Id.* Notably, the court added that because Congress so clearly provided the courts of appeals exclusive jurisdiction over the validity of EPA's proposed FIP, "[i]t cannot be successfully argued that [Section 304] which authorizes a citizen to

commence action against the administrator for failure to perform a non-discretionary duty justifies jurisdiction in this case." *Id.* The court concluded that "[t]o allow review by way of injunction in the case at bar could only serve to cause delay and . . . conceivably encourage forum shopping and the thwarting of procedures which Congress has carefully adopted." *Id.*

As in *Anaconda*, Plaintiff here cannot successfully argue that CAA Section 304 provides this Court with subject matter jurisdiction over this case. Plaintiff is not entitled to substantive review of an ongoing agency rulemaking under the guise of compelling nondiscretionary action. If reviewable at all (and, as shown below, they are not now reviewable), Plaintiff's claims are reviewable only by the Tenth Circuit under CAA Section 307(b). Accordingly, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1).

## B.  THE CASE IS NOT RIPE FOR REVIEW.

Furthermore, the Complaint must be dismissed for lack of subject matter jurisdiction because Plaintiff's claims are not ripe for review. As the Supreme Court has explained,

> the ripeness requirement is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision had been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Premature review "denies the agency an opportunity to correct its own mistakes and to apply its expertise," *FTC v.*

*Standard Oil Co.*, 449 U.S. 232, 242 (1980), and risks wasting judicial resources, as "review . . . may turn out to [be] unnecessary." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 736 (1998).

Here, Plaintiff challenges the validity of what EPA has only *proposed* to do. Courts, including the Tenth Circuit, have consistently rejected as premature challenges to proposed rules because proposed rules do not create any legal rights or impose any legal obligations. *See, e.g., Anaconda*, 482 F.2d at 1305; *Utah Int'l, Inc. v. EPA*, 478 F.2d 126, 127-28 (10th Cir. 1973) (finding that the court did not have jurisdiction to review proposed regulations because they were not final agency actions reviewable under CAA Section 307 and were not ripe for judicial review); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983) (stating that proposed rules are generally not ripe for review). Indeed, after finding that the district court did not have jurisdiction under the CAA's judicial review framework, the court in *Anaconda* went on to find that "[a] further reason for denying jurisdiction in this case is that the cause was not ripe for injunctive relief [because the FIP] was merely a proposed one and not formalized and final." *Anaconda*, 482 F.2d at 1305. The Tenth Circuit explained that a proposed regulation does not injure a party since there is no certainty that the regulation will be brought to bear on the party, and thus, until a proposed regulation is made final and applied to a particular litigant, it is not ripe for review. *Id.*

In this case, EPA has merely proposed to disapprove part of Oklahoma's Regional Haze SIP and promulgate a partial FIP to address the deficient parts. *See* 76 Fed. Reg. at 16,169-70. In the proposed rule, EPA requested public comment on its proposed actions

and scheduled a public hearing.  *See id.* at 16,168.  Oklahoma, as well as the public at large, had the opportunity to comment on EPA's proposed actions, and EPA is required to consider and respond to such comments.  *See* 42 U.S.C. § 7607(d)(5).  Until EPA takes final action, however, Oklahoma has not been finally deprived of any of the procedural safeguards Plaintiff alleges it has been, and EPA has not acted in contravention of any provision of the CAA as Plaintiff alleges EPA has done.  In other words, EPA could change its mind.  The outcome of the notice-and-comment procedure "is not foreordained."  *Bethlehem Steel Corp. v. Gorsuch*, 742 F.2d 1028, 1036 (7th Cir. 1984).

Moreover, if Plaintiff is dissatisfied with the final action that EPA ultimately takes with respect to Oklahoma's Regional Haze SIP submission, Oklahoma will be able to obtain judicial review of the final rule under Section 307(b) of the CAA, and make all of the same arguments it has raised in the Complaint in a petition for review of such final rule.  Because Section 307(d)(9) grants the courts of appeals ample authority to consider both substantive and procedural challenges to the final rule, postponing review in this case will not result in a significant "hardship to the parties."  *Abbott Labs.*, 387 U.S. at 149.  Accordingly, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) as not ripe for review.

## II.     THE COMPLAINT FAILS TO STATE A CLAIM.

### A.     THE CAA DOES NOT IMPOSE A NONDISCRETIONARY DUTY ON EPA TO PARTIALLY DISAPPROVE OKLAHOMA'S SIP BEFORE AND SEPARATE FROM PROMULGATING A PARTIAL FIP.

In its first claim, Plaintiff alleges EPA has a nondiscretionary duty to take final action partially disapproving Oklahoma's Regional Haze SIP before and separate from taking final action to promulgate a partial FIP to address deficiencies in Oklahoma's Regional Haze SIP. The statute plainly imposes no such nondiscretionary duty.

In pertinent part, CAA Section 110(c) states:

> The Administrator shall promulgate a [FIP] *at any time* within two years after the Administrator finds that a State has failed to make a required SIP submission . . . or disapproves a [SIP] submission in whole or in part . . . *unless* the State corrects the deficiency, *and* the Administrator approves the plan or plan revision, *before* the Administrator promulgates such [FIP].

42 U.S.C. § 7410(c) (emphasis added). In other words, the nondiscretionary duty created by Section 110(c) is not that EPA must take action on a SIP submission before promulgating a FIP; rather, Section 110(c) mandates that EPA promulgate a FIP at any time within two years once one of three triggering events occurs. *Id.*; *see also Coal. for Clean Air v. S. Cal. Edison Co.*, 971 F.2d 219, 224-25 (9th Cir. 1992) (discussing the three events that trigger EPA's duty to promulgate a FIP). In this case, the triggering event was EPA's finding that Oklahoma failed to submit a regional haze SIP. *See* 74 Fed. Reg. at 2392. Under the statute, EPA had a duty to promulgate a FIP "at any time within two years" of that finding. *See id.* at 2393. As explained more fully in Part II.B. *infra*, EPA's duty to do so did not cease once the two years expired. And while a

delinquent State has the opportunity to correct deficiencies in its SIP submission, that opportunity lasts only until EPA promulgates a FIP, and nothing in the statute requires EPA to take action on the State's attempt to correct the deficiency prior to promulgating a FIP. 42 U.S.C. § 7410(c) ("*unless* the State corrects the deficiency, *and* the Administrator approves the plan or plan revision, *before* the Administrator promulgates such [FIP]") (emphasis added); s*ee also Coal. for Clean Air*, 971 F.2d at 225 n.6 (noting that the opportunity to correct a SIP deficiency provided in Section 110(c) bears on what happens after EPA's duty to promulgate a FIP is triggered, not when the duty is triggered), 226 ("EPA has authority to approve a SIP that meets the requirements of the Act at any time prior to the actual promulgation a FIP.")

Furthermore, Oklahoma's claim that it will be deprived of an "important procedural safeguard" if EPA takes the actions it has proposed is disingenuous at best. The reasons EPA has proposed to partially disapprove Oklahoma's Regional Haze SIP dictate the substance of EPA's partial Regional Haze FIP for Oklahoma; thus, any comments Oklahoma has submitted on the partial SIP disapproval are relevant to the partial FIP promulgation and vice versa. *See, e.g.*, 76 Fed. Reg. 16,168 ("EPA is proposing to approve a portion of [Oklahoma's Regional Haze] SIP revision as meeting certain requirements of the regional haze program and to partially approve and partially disapprove those portions addressing the requirements for best available retrofit technology (BART) and the long-term strategy (LTS). EPA is proposing a Federal Implementation Plan (FIP) to implement sulfur dioxide (SO2) emission limits on six sources *to address these issues*.") (emphasis added). Oklahoma has been given the

opportunity to comment on both of these proposed actions during the notice and comment period for the proposed rule, and EPA will consider the comments in determining whether to promulgate a final partial disapproval of Oklahoma's Regional Haze SIP and final partial FIP. Accordingly, Oklahoma's attempt to force EPA to conduct two separate notice-and-comment periods would only serve to delay Agency decisionmaking after an unnecessary expenditure of Agency resources. The statute plainly does not provide Plaintiff with the "nondiscretionary duty claim" it alleges and the Court should not entertain it. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Thus, Claim 1 of the Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### B. EPA'S DUTY TO PROMULGATE A FIP DOES NOT CEASE ONCE IT HAS MISSED THE STATUTORY DEADLINE.

In its second claim, Plaintiff contends that once EPA's deadline for performing a nondiscretionary duty has passed, EPA no longer has authority to perform the duty. *See* Complaint ¶¶ 5, 23. The Supreme Court and numerous circuit courts of appeals have held otherwise, and therefore, Plaintiff's second claim must fail.

In the landmark case *Brock v. Pierce County*, the Supreme Court held that "[w]hen . . . there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." 476 U.S. 253, 260 (1986). The Court noted that "[it] would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency

action, especially when important public rights are at stake[,]" and referred to "the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *Id.* Thus, the Court found that because nothing in the statute at issue or its legislative history suggested that Congress intended to impose a jurisdictional limitation on agency action, and the Administrative Procedure Act provided a remedy for agency action unlawfully withheld or unreasonably delayed by authorizing a district court to compel such action, the agency was not divested of authority to act beyond the statutory deadline. *Id.* at 260 n.7, 261-65.

The Supreme Court and numerous circuit courts of appeals have applied *Brock's* teaching in many subsequent cases, including CAA cases. *See e.g., General Motors Corp. v. United States*, 496 U.S. 530, 542 (1990) (upholding EPA's authority to bring an enforcement action under the CAA after the statutory deadline had passed); *Sw. Pa. Growth Alliance v. Browner*, 121 F.3d 106, 113-15 (3d Cir. 1997) (upholding EPA's authority to consider data acquired more than 18 months after Pennsylvania requested a certain CAA redesignation when EPA's statutory deadline for responding to the request was 18 months); *see also United States v. Dolan*, 571 F.3d 1022, 1027 (10th Cir. 2009) (collecting Supreme Court cases applying *Brock's* holding). In describing this vast precedent, the Tenth Circuit summarized:

> Call this the better-late-than-never principle. Congress imposes deadlines on other branches of government to prod them into ensuring the timely completion of their statutory obligations to the public, not to allow those branches the chance to avoid their obligations just by dragging their

feet. It would be a strange thing indeed if a bureaucracy or court could avoid a congressional mandate by unlawful delay.

*Dolan*, 571 F.3d at 1027.

Here, it certainly would be strange, and contrary to the goals of the CAA, if EPA could avoid its nondiscretionary duty to promulgate a FIP after finding Oklahoma had failed to submit a regional haze SIP by dragging its feet during the two years following the finding. Nothing in CAA Section 110(c), elsewhere in the statute, or in the CAA's legislative history suggests that Congress intended EPA to lose its authority to promulgate a FIP after finding a State has failed to submit a complete or adequate SIP once the two-year deadline expires. In fact, as revealed by the statutory framework of shared state and federal responsibility for implementation of the CAA's standards, Congress intended EPA to have the last word on the sufficiency of implementation plans. *See Mountain States*, 630 F.2d at 757 ("Congress clearly intended the final decision [on implementation plans] to be that of the EPA."). If Plaintiff had its way, EPA would lose the opportunity to have the last word once its deadline expired and would be only authorized to act if a State submitted a SIP. But without the threat of a FIP, States would have little incentive to submit a SIP after the two-year deadline, and would therefore be able to escape the requirements of the CAA and EPA's regional haze regulations simply by failing to submit a SIP. EPA too would be able to dodge its responsibility under the Act to ensure that these requirements are met by all States. Not only are such consequences contrary to the CAA's plain statutory framework providing EPA with the last word, they are also contrary to the CAA's goal of achieving attainment of air quality

standards and protecting visibility through state or federal implementation plans, and therefore contrary to the public interest.[1]

Moreover, as detailed *supra*, the CAA provides a very specific remedy for EPA's failure to promulgate a FIP by the statutory deadline—an order by a district court compelling the agency to take action. *See* 42 U.S.C. § 7604(a)(2). This remedy is evidence that Congress did not intend EPA's CAA duties to cease once a statutory deadline has passed, and would be far less drastic than the remedy Oklahoma urges. Thus, this Court need not and should not adopt Plaintiff's suggested sanction by enjoining EPA from taking final agency action here. *If* it becomes final, EPA's proposed partial FIP for Oklahoma will be better late than never and well within the Agency's authority under CAA.

Indeed, if the CAA were interpreted as Plaintiff would have it, the remedy afforded to interested parties for delay would be vitiated. Under Plaintiff's theory, a court could not order EPA to take action that is nondiscretionary under the Act once its deadline for action passed. But, no claim against EPA for failure to take a nondiscretionary action could even arise until after the statutory deadline passes without EPA having taken such action. This theory turns CAA Section 304(a)(2) on its head.

---

[1] Plaintiff caveats its claim by requesting that EPA be enjoined from promulgating a partial FIP until EPA takes action to "re-open" the two-year period. *See* Complaint ¶ 23. This caveat does nothing to help Plaintiff's claim. Just as nothing in the statute requires EPA to take action on a State's attempt to correct a deficiency before promulgating a FIP, nothing in the statute requires, or even allows, EPA to take any action to "re-open" the time within which EPA must promulgate a FIP. Indeed, such a provision would counteract the very purpose of the statutory deadline Congress put in place in CAA Section 110(c).

Accordingly, this Court must dismiss Plaintiff's second claim under Fed. R. Civ.

P. 12(b)(6) for failure to state a claim.

## III.    IN THE ALTERNATIVE, DEFENDANT MOVES TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a).

Although the discussion above demonstrates that there are many good reasons for

this Court to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) or (6), Defendant

moves in the alternative to transfer the case to the Northern District of California

pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides a district court with discretion

to transfer an action "[f]or the convenience of parties and witnesses, in the interest of

justice, . . . to any other district or division where it might have been brought."  28 U.S.C.

§ 1404(a); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516

(10th Cir. 1991) (listing factors district courts should consider).

Here, if this case were to go forward, a transfer to the Northern District of

California would be in the interest of justice because the remedy requested by Plaintiff

directly conflicts with the Consent Decree entered by the Honorable Claudia Wilken in

*WildEarth Guardians v. Jackson,* 4:09-cv-02453 (N.D. Cal.).  Plaintiff seeks an

injunction prohibiting EPA "from taking any further action on the Regional Haze[] FIP

prior to taking final action with respect to Oklahoma's SIP" and "from taking any further

action on the Regional Haze FIP prior to taking such action as necessary to re-open the

two-year statutory window for EPA to promulgate such a FIP."  *See* Complaint, Prayer

for Relief.  But any such remedy would prevent EPA from performing its obligations

under the *WildEarth* Consent Decree because, as EPA said in the proposed rule, EPA

intends to satisfy the obligations at issue in the WildEarth Consent Decree—to approve a SIP or promulgate a FIP for Oklahoma to satisfy the interstate transport requirements of CAA Section 110(a)(2)(D)(i) with regard to EPA's 1997 ozone and PM2.5 standards—by promulgating the partial disapproval of Oklahoma's Regional Haze SIP and the partial Regional Haze FIP for Oklahoma. 76 Fed. Reg. at 16,193. A transfer would alleviate such a conflict because Judge Wilken could issue an order in this case consistent with her prior orders in the *WildEarth* case or modify the *WildEarth* Consent Decree to conform to the remedy she deems appropriate in this case in the event she finds for Plaintiff.

Moreover, this case involves questions of statutory interpretation and the validity of agency action well-documented in an administrative record. As such, the case would be resolved through motion practice rather than trial. With the ease of electronic filing and telephone appearances, any inconvenience to Oklahoma's attorneys of having to litigate the case in California is likely to be minimal, and there will be no witnesses who could be inconvenienced by having to travel to California. Furthermore, this case could have been brought in the Northern District of California. The statute grants jurisdiction over citizen suits to the federal district courts generally, and does not limit venue over such suits involving EPA's duty under CAA Section 110(c). *See* 42 U.S.C. § 7604. Thus, because avoiding the possibility of conflicting court orders is in the interest of justice and the inconvenience to Oklahoma of having to litigate its claims in the Northern District of California is minimal, this Court should transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) if it denies the motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the instant action under Fed. R. Civ. P. 12(b)(1) or (6), or, in the alternative, transfer the instant action to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a).

DATED:  July 22, 2011        Respectfully Submitted,

IGNACIA S. MORENO
Acting Assistant Attorney General
Environment and Natural Resources Division

*/s/ Stephanie J. Talbert*
STEPHANIE J. TALBERT, Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone:   (202) 514-2617
Facsimile:   (202) 514-8865
E-mail:   stephanie.talbert@usdoj.gov

*Counsel for Defendant*

M. Lea Anderson
United States Environmental Protection Agency
Office of General Counsel
Ariel Rios Building
1200 Pennsylvania Ave. NW
Washington. D.C. 20460
Telephone:   (202) 564-5571
E-mail:   anderson.lea@epa.gov

*Of Counsel for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b), OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) AND MEMORANDUM IN SUPPORT with the clerk of the court for the United States District Court for the Western District of Oklahoma using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

_/s/ Stephanie J. Talbert_
STEPHANIE J. TALBERT