UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA EX. REL. SCOTT PRUITT, in his official capacity as Attorney General of Oklahoma,<br><br>        Plaintiff,<br><br>v.<br><br>LISA P. JACKSON, ADMINISTRATOR, in her official capacity as Administrator of the United States Environmental Protection Agency,<br><br>        Defendant. | No. CIV-11-605-F |

**MOTION OF SIERRA CLUB AND WILDEARTH GUARDIANS
TO INTERVENE IN SUPPORT OF DEFENDANT**

The Sierra Club and WildEarth Guardians (collectively "Environmental Organizations") respectfully move to intervene in support of defendant U.S Environmental Protection Agency ("EPA") in the above captioned case, pursuant to Federal Rule of Civil Procedure 24(a)(2) and (b)(1)(B), and Local Rule 7.1(l). Environmental Organizations have conferred with counsel for the parties and have been informed that Plaintiff intends to oppose this motion and Defendant EPA takes no position.

1

## INTRODUCTION

Oklahoma is attempting to suspend EPA's efforts to improve regional air quality and protect public health by challenging EPA's proposed partial approval and disapproval of Oklahoma's Regional Haze State Implementation Plan ("SIP") and proposed promulgation of a Federal Implementation Plan ("FIP"). 76 Fed. Reg. 16168 (Mar. 22, 2011) (hereinafter "EPA proposed FIP"). EPA is effectively under court order to take these actions. *See WildEarth Guardians v. Lisa Jackson*, 4:09-CV-02453-CW (N.D. Cal. 2009), Consent Decree [Dk# 26] at para. 7 and amended thereto, attached as Exhibit 1. If Oklahoma succeeds in this case, it would conflict with that court order. Moreover, harmful emissions from coal-fired power plants would continue unabated, harming public health and impairing visibility. Environmental Organizations are seeking to intervene as defendants to defend the victory they achieved when EPA acted on the Oklahoma SIP and to protect their longstanding interest in clean and clear air. This motion is timely and will not result in delay. Environmental Organizations' interests diverge from EPA such that EPA does not adequately protect their interests.

## BACKGROUND

### I. Environmental Organizations

Sierra Club, founded in 1892, is a national nonprofit environmental organization with approximately 622,000 members nationwide, including a chapter with over 3,000 members in Oklahoma. Sierra Club has worked from the inception of the Clean Air Act to strengthen and implement its provisions,

2

including those that address environmental and public health impacts that result from burning coal. Sierra Club's national Beyond Coal Campaign is a major effort to promote clean air and to protect communities and natural environments threatened by dangerous pollution from coal-fired power plants.

WildEarth Guardians ("Guardians") is a New Mexico-based nonprofit organization with offices in Santa Fe, Denver, and Phoenix. Guardians is dedicated to protecting and restoring wildlife, wild places, and wild rivers in the American West. Guardian members in Oklahoma depend on the EPA to follow through with its legal duties under the Clean Air Act to protect clean air, the environment, and public health. The goals of Guardians' Climate and Energy program are to defend the environment from the harmful effects of fossil fuels, including air pollution, and to advance cleaner energy solutions.

## II. Regional Haze and EPA's Proposed FIP

Haze degrades visibility in many American cities and scenic areas, including Oklahoma's beloved Wichita Mountains. Haze results when sunlight hits tiny pollution particles in the air, reducing the clarity and obscuring the color of what we see.

In order to protect their "intrinsic beauty and historical and archaeological treasures," H.R. REP. NO. 95-294, at 203-04 (1977), Congress established a national goal in the Clean Air Act to reduce pollution and achieve natural visibility conditions at national parks, wilderness areas, and other designated "Class I" areas, including the Wichita Mountains. 42 U.S.C. § 7491(a)(1); 40 C.F.R. §

51.308(d)(1). To meet this goal, states are required to design an implementation plan to reduce, and ultimately eliminate, man-made haze from air pollution sources that may cause or contribute to visibility impairment at any protected Class I area. *Id.* In many states, coal-fired power plants are the largest sources of the pollutants that cause haze.

Reducing haze has public health benefits because pollutants that cause visibility impairments also harm public health. Haze pollutants include nitrogen oxides (NOx), sulfur dioxide ($SO_2$), and particulate matter (PM). *See* EPA's Proposed FIP, 73 Fed. Reg. 16168, 16180, Table 3 (evaluating NOx, $SO_2$, and PM emissions). NOx is a precursor to ground level ozone, which is associated with respiratory diseases, asthma attacks, and decreased lung function. In addition, NOx reacts with ammonia, moisture, and other compounds to form particulate matter that can penetrate deep into the lungs and cause and worsen respiratory diseases, aggravate heart disease, and lead to premature death.[1] Similarly, $SO_2$ increases asthma symptoms, leads to increased hospital visits, and can form particulate matter that aggravate respiratory and heart diseases and cause premature death.[2]

To enforce the Clean Air Act requirements that control haze, WildEarth Guardians filed a citizen suit against the EPA over its failure to promulgate a FIP

---

[1] EPA, Health – Nitrogen Dioxide, http://www.epa.gov/air/nitrogenoxides/health.html (last visited July 7, 2011).
[2] EPA, Health – Sulfur Dioxide, http://www.epa.gov/air/sulfurdioxide/health.html (last visited July 7, 2011).

4

that adequately implements the Act's visibility protection requirements in Oklahoma. *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009). WildEarth Guardians and EPA resolved this case by entering into a consent decree, which the court entered as an order. *Id.* at Dkt. #26, Ex. 1. The court modified the consent decree in that case so that it currently requires, by October 14, 2011:

> the Administrator to sign a notice or notices approving a State Implementation Plan ("SIP"), promulgating a Federal Implementation Plan ("FIP"), or approving a SIP in part with promulgation of a partial FIP for Oklahoma to meet the requirement of 42 U.S.C. § 7410(a)(2)(D)(i)(II) regarding interfering with measures in other states related to protection of visibility[.]

*Id.* at Dk. #35, attached as exhibit 2.

EPA took the first step to comply with the *WildEarth Guardians* court order by issuing the proposed FIP for Oklahoma that the state is challenging in the present case. On March 22, 2011, EPA proposed to partially approve and partially disapprove Oklahoma's February 19, 2010 revised SIP, and proposed to promulgate a federal implementation plan. 76 Fed. Reg. 16,168 (Mar. 22, 2011). Specifically, EPA proposed to disapprove portions of Oklahoma's plan addressing sulfur dioxide ($SO_2$) emissions limits for six coal-fired power plants, and proposed a FIP to implement $SO_2$ emissions limits on those six sources. *Id.* EPA found that Oklahoma's proposed $SO_2$ emissions limits for these major sources of sulfur dioxide emissions did not comply with haze regulations and could actually allow emissions to increase. 76 Fed. Reg. at 16,182. EPA proposed a lower $SO_2$

5

emissions limit for these six coal-fired units that can be achieved by installing a pollution control device known as a dry scrubber. 76 Fed. Reg. 16,168, 16,186-87.

Environmental Organizations and their members have participated extensively in the administrative proceedings related to the EPA actions at issue in this case. They submitted considerable technical comments to EPA on the proposed FIP as well as sponsored a comment campaign that prompted fifty-one other people to submit comments to EPA, and several members spoke at EPA's public hearings in Tulsa and Oklahoma City.

### III. The Current Case

Oklahoma has brought two claims in this case regarding EPA's proposed FIP. The State claims EPA's action is both too early and too late. On January 15, 2009, EPA published an official finding that Oklahoma had failed to submit a regional haze SIP by the required deadline. 74 Fed. Reg. 2,392, 2,393 (Jan. 15, 2009). Oklahoma claims that the March 22, 2011 proposed FIP is invalid because EPA was required to act within two years of the 2009 finding, by January 15, 2011. (Complaint at ¶¶ 1-5, 20-25, *Oklahoma v. Jackson,* No. CIV-11-605-F (W.D. Ok. May 31, 2011). Oklahoma also claims that EPA's proposed FIP is invalid because EPA did not take final action on rejecting a portion of Oklahoma's SIP before issuing a proposed FIP. (Compl. ¶¶1-6, 16-19.)

## ARGUMENT

### I. Environmental Organizations are Entitled to Intervention of Right.

A party is entitled to an intervention of right under Fed. R. Civ. P. 24(a)(2) when (1) the motion is timely; (2) the applicant claims an interest that is related to the property or transaction which is the subject of the action; (3) the applicant's interest may, as a practical matter, be impaired or impeded; and (4) the existing parties do not adequately represent the applicant's interest. *Coalition of Ariz./N. M. Counties for Stable Economic Growth v. Dept. of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (quoting Fed. R. Civ. P. 24(a)(2)); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Utah Ass'n of Counties.*, 255 F.3d at 1250 (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). The Tenth Circuit "has tended to follow a somewhat liberal line in allowing intervention." *Coalition of Ariz./N. M. Counties*, 100 F.3d at 841 (quoting *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977)).

### A. Environmental Organizations' Motion to Intervene is Timely.

Environmental Organizations' motion to intervene is timely. Timeliness of a motion is based on all the circumstances, including: (1) how long the applicant knew of his interest in the case; (2) the prejudice to the existing parties; (3) the

prejudice to the applicant; and (4) any unusual circumstances that may exist. *Utah Ass'n of Counties*, 255 F.3d at 1250.

Environmental Organizations' motion is timely because it was filed on July 22, 2011, which is within 60 days after Oklahoma filed its complaint on May 31, 2011. *Cf. id.* at 1250-51 (finding a two and a half year period timely); *Coalition of Ariz./N. M. Counties*, 100 F.3d at 839-40 (granting motion to intervene filed approximately eight months after suit filed).

Environmental Organizations will not cause prejudice or delay. The parties have not yet filed answers or preliminary motions and the Court has not held a scheduling conference.

### B. Environmental Organizations Have a Substantial Interest in Reducing Regional Haze and Defending EPA's Actions

Environmental Organizations and their members have established an interest in defending EPA's rulemaking activities challenged in this case because the consent decree with EPA requires the agency to undertake the actions at issue, they have participated extensively in the administrative proceedings, and they will benefit from the pollution reduction that results from the rules.

A potential intervenor must claim an interest that "could be adversely affected by the litigation," but "practical judgment," and not a "rigid formula," must be applied. *San Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (finding "indisputable that SUWA's environmental concern is a legally

8

protectable interest."). The interest test is "primarily a practical guide." *Utah Ass'n of Counties*, 255 F.3d at 1251-52.

Environmental Organizations have a legally protected interest in the implementation and enforcement of federal regulations governing air pollution and protecting public health. Their members who live and recreate in the state of Oklahoma have aesthetic, recreational, and health interests related to the region's air quality. These members often hike in the Wichita Mountains and around the region and are troubled by the lack of clear scenic vistas and fresh mountain air. *E.g.*, Applegate Decl. ¶¶ 3-4, 6-7, Nichols Decl. ¶¶ 3-6. The pollution prevents these members from fully enjoying their recreational activities. They are also concerned that the hazy air harms their health. *Id.* If Plaintiffs prevail in the present case, the resulting delay or change in the implementation of Oklahoma's regional haze requirements would harm these members by allowing the continued emission of harmful, haze causing pollutants.

WildEarth Guardians has a strong interest in ensuring that the court-ordered deadline it obtained in a related case is obeyed. In 2009, WildEarth Guardians filed a Clean Air Act citizen suit against the EPA over its failure to promulgate a FIP implementing the Act's visibility protection requirements in Oklahoma. *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009). The parties resolved this case by entering into a consent decree that calls for the EPA Administrator to take final action on these Regional Haze requirements by October 14, 2011. *Id.* at Dkt. #26, Ex. 1; Dk. #35, Ex. 2. Oklahoma seeks the

opposite in this case; an order from this Court requiring EPA to violate the court order in *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009).

Environmental Organizations have also invested significant resources working on EPA's proposed Regional Haze FIP that is the subject of Oklahoma's present suit, stressing the importance of reducing harmful haze-forming emissions, and the feasibility of using cleaner and cheaper alternatives in achieving emission reductions. Environmental Organizations submitted comments to the state regarding its draft SIP and considerable technical comments to EPA on the proposed FIP. *See* "Oklahoma Chapter of the Sierra Club Comments" (Dec. 13, 2009) (see attached Exhibit 3); "Comments of Sierra Club and WildEarth Guardians," Doc.ID # EPA-R06-OAR-2010-0190-0054, Dkt # EPA-R06-OAR-2010-0190 (May 23, 2011) (see attached Exhibit 4).[3] Sierra Club sponsored a comment campaign that prompted fifty-one people to submit comments to EPA on the proposed FIP. Doc. ID # EPA-R06-OAR-2010-0190-0055, Dkt # EPA-R06-OAR-2010-0190.[4] In addition, several members spoke at EPA's public hearings in Tulsa and Oklahoma City. *See* Transcripts, Doc. ID # EPA-R06-OAR-2010-0190-0031, p. 2-3 (listing speakers)[5] & Doc. ID # EPA-R06-OAR-2010-0190-

---

[3] *Available at* http://www.regulations.gov/#!documentDetail;D=EPA-R06-OAR-2010-0190-0054
[4] *Available at* http://www.regulations.gov/#!documentDetail;D=EPA-R06-OAR-2010-0190-0055
[5] *Available at* http://www.regulations.gov/#!documentDetail;D=EPA-R06-OAR-2010-0190-0031

0031, p. 2-3 (listing speakers)[6], Dkt # EPA-R06-OAR-2010-0190. Environmental Organizations are also participating in various related dockets at the Oklahoma Corporation Commission. *See, e.g.*, Oklahoma Corporation Commission Cause No. PUD 2011-77 (Notice of Inquiry to examine existing and pending federal regulations and legislation that could affect regulated utilities and their customers in the state of Oklahoma.)

Sierra Club has a long history demonstrating its interest in the implementation and enforcement of Clean Air Act requirements, dating back to the early days of the Act. *See, e.g., Sierra Club v. EPA*, 344 F.Supp. 253 (D.C. Cir. 1972). In addition to advocacy at local and national levels, Environmental Organizations have pursued litigation strategies to advance members' interests in clean and clear air. *See, e.g., American Corn Growers Ass'n v. EPA*, 291 F.3d 1 (D.C. Cir. 2002).

### C. Environmental Organizations' Interests Will Be Harmed if Plaintiffs Prevail.

Should Plaintiff prevail in this case, Environmental Organizations' interest in upholding the consent decree in *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009), will be harmed, and Oklahoma will continue to emit high levels of harmful pollutants that harm members' aesthetic and recreational enjoyment of natural areas. Environmental Organizations must show that, "as a practical matter," their ability to protect their interest may be impaired or impeded.

---

[6] *Available at* http://www.regulations.gov/#!documentDetail;D=EPA-R06-OAR-2010-0190-0032

11

*Coalition*, 100 F.3d at 844. The Tenth Circuit has held that the "impairment" element "presents a minimal burden." *WildEarth Guardians v. Nat'l Park Service*, 604 F.3d 1192, 1199 (10th Cir. 2010).

Oklahoma's success in this case could result in interference with the consent decree WildEarth Guardians obtained in *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009). WildEarth Guardians has a legal interest in EPA's compliance with the consent decree in that case. However, if Oklahoma prevails in this case, EPA would be subject to conflicting court orders: an order to finalize the Regional Haze FIP as well as an order not to finalize the Regional Haze FIP. Assuming EPA chose to violate the court order in *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009) and comply with a court order in this case, WildEarth Guardians' interest in seeing compliance with the court order in *WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009) would be injured.

If Plaintiff prevails, Oklahoma will continue to emit high levels of harmful pollutants that harm members' aesthetic and recreational enjoyment of natural areas. Air pollution and haze prevents members from fully enjoying scenic mountain vistas. Applegate Decl. ¶¶ 3-4, 6-7, Nichols Decl. ¶¶ 3-6. Members already refrain from visiting some areas that are very impacted by haze, and they are concerned haze will worsen if Oklahoma continues to emit high levels of haze pollutants. *Id.*

### D. The Government May Not Adequately Represent Environmental Organizations' Interests.

Environmental Organizations are non-profit membership groups focused exclusively on their mission of improving and protecting the environment. Their interest in this case is clearly divergent from EPA because they have had to sue EPA to force it to render a decision on the Oklahoma proposed SIP in the first place. *See WildEarth Guardians v. Lisa Jackson*, 4:09-cv-02453-CW (N.D. Cal. 2009). The Tenth Circuit has found inadequate representation under similar circumstances, holding that the government's ability to represent a commercial wildlife photographer "is made all the more suspect by its reluctance in protecting the Owl, doing so only after [potential intervenor] Dr. Silver threatened, and eventually brought, a law suit to force compliance with the act." *Coalition of Ariz/NM Counties,* 100 F.3d at 837 (listing similar cases).

Additionally, Environmental Organizations and EPA have differed regarding the sufficiency of EPA's proposed Regional Haze FIP. For example, Environmental Organizations commented that EPA's proposed FIP should be more stringent by requiring limits for ammonia and sulfuric acid mist. "Comments of Sierra Club and WildEarth Guardians," Ex. 4 at 30. Environmental Organizations further stressed that shutting down some of the coal-fired units or repowering them with natural gas is the best option for Oklahoma. *Id.* at 17. Thus, Environmental Groups' objectives differ from EPA's as to the timing of

proposing, finalizing and implementing Regional Haze plans and the substance of such plans.

The Tenth Circuit has "repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010). EPA, by its nature as a federal agency, serves the interests of many constituencies of the public, many who may have divergent interests from those of the Environmental Organizations. *See Utah*, 255 F.3d at 1255 (public interest represented by government may differ from particular interest); *Coalition*, 100 F.3d at 845-46. EPA has discretion to take into account many different factors, outside of environmental and health concerns when making decisions, including the cost of proposed rules and their impact on jobs. *See* EPA's Proposed FIP for Oklahoma, 76 Fed. Reg. 39,104. Courts routinely allow environmental groups to intervene to join in the defense of government agencies against challenges to environmental regulations.[7]

Environmental Organizations have met the "minimal" burden of demonstrating the possibility that representation by existing parties "may be inadequate." *Utah Ass'n of Counties*, 255 F.3d at 1254 (quoting *Trbovich v.*

---

[7] *See e.g. Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165 (D.D.C. 2008) (Sierra Club intervened as defendant in industry challenge to EPA regulatory definition of "navigable waters"); *BCCA Appeal Group v. EPA*, 355 F.3d 817 (5th Cir. 2003) (allowing environmental groups to intervene in an appeal of an EPA SIP approval); *Utah Ass'n of Counties*, 255 F.3d at 1256.

*United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). "The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." *Utah*, 255 F.3d at 1254 (quoting *NRDC v. US Nuclear Reg. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978)); *but see San Juan County v. United States*, 503 F.3d 1163, 1204 (10th Cir. 2007) (*en banc*) (holding that conservation groups were adequately represented by the government because they shared a single litigation objective, but noting, "This is not like the situation we found in *Coalition*, 100 F.3d at 845, in which the federal agency was defending a position that it had reluctantly adopted only as a result of litigation by the prospective intervenor.").

## II. Alternatively, Environmental Organizations Request Permissive Intervention

If this Court does not grant intervention of right, Environmental Organizations respectfully request that the Court grant permissive intervention. Under Federal Rule of Civil Procedure 24(b), the Court may permit anyone to intervene who, on timely motion, "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When considering the motion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Environmental Organizations have, at a minimum, met the requirements of permissive intervention. They have a defense that shares a common question

because the main action threatens to undermine the result WildEarth Guardians achieved in the consent decree in *WildEarth Guardians v. Lisa Jackson*. *See infra* Background, Sec. 2; Argument, Sec. I (B)&(C). The intervention will not delay or prejudice the adjudication of any party's rights. Environmental Organizations intend to satisfy any scheduling requirements established by the Court.

## CONCLUSION

Environmental Organizations respectfully request that the Court grant their Motion to Intervene.

Dated:


RESPECTFULLY SUBMITTED,

*/s/ Cheryl A. Vaught*
Cheryl Vaught

Cheryl A. Vaught, OBA No. 11184
Vaught & Conner, PLLC
1900 NW Expressway, Suite 1300
Oklahoma City, Oklahoma 73118
Telephone:   (405) 848-2255
Facsimile:   (405) 840-4701
Cvaught@vcock.com


Andrea Issod, CA BAR # 203920, *[pro hac vice application forthcoming]*
Sierra Club Environmental Law Program
85 Second Street, 2d Floor
San Francisco, CA 94105-3441
Phone: (415) 977-5544
Fax: (415) 977-5793

Law Office of Robert Ukeiley, [*pro hac vice application forthcoming*]
435 R Chestnut Street, Suite 1
Berea, KY 40403
Tel: (859) 986-5402
Fax: (866) 618-1017
E-mail: rukeiley@igc.org